

2003 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

12-17-2003

# Hayes v. Fed Bur Prisons

Precedential or Non-Precedential: Non-Precedential

Docket No. 03-1219

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2003

Recommended Citation

"Hayes v. Fed Bur Prisons" (2003). *2003 Decisions.* Paper 53.
http://digitalcommons.law.villanova.edu/thirdcircuit_2003/53

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2003 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 03-1219

ROY HAYES,
Appellant

v.

FEDERAL BUREAU OF PRISONS;
JOHN DOE, others;
JEANETTE SILVA, DR.;  JOSE DIAZ, DR.;
SOUTH JERSEY HOSPITAL SYSTEM, (BRIDGETON, NJ);
UNITES STATES OF AMERICA; JOHN H. READ, M.D.

Appeal from the United States District Court
for the District of New Jersey
(D.C. Civil No. 99-cv-01422)
District Judge:  Honorable Joel A. Pisano

Submitted Under Third Circuit LAR 34.1(a)
November 20, 2003

Before:  RENDELL, BARRY and MAGILL*, Circuit Judges.

(Filed: December 17, 2003)

OPINION OF THE COURT

_____

*Honorable Frank J. Magill, Senior Circuit Judge for the Eighth Circuit, sitting by
designation.

RENDELL, Circuit Judge.

Roy Hayes appeals three orders of summary judgment granted by the District Court in favor of John H. Read, M.D., Jose Diaz, M.D., and the South Jersey Hospital System[1] on Hayes' medical malpractice and lack of informed consent claims. We will affirm.

The District Court had diversity jurisdiction under 28 U.S.C. § 1332. We exercise jurisdiction over the Court's final orders pursuant to 28 U.S.C. § 1291. The District Court ruled that the claim against Dr. Read was time-barred and that there were no genuine issues of material fact regarding the claims against Dr. Diaz and the South Jersey Hospital System. Hayes challenges the rulings as to all but the Hospital System. Our review of the District Court's summary judgment orders is *de novo*. Armour v. County of Beaver, Pa., 271 F.3d 417, 420 (3d Cir. 2001).

While incarcerated in a federal correctional facility, Hayes experienced difficulty breathing and was taken to the infirmary where a catheter was inserted so that he could urinate while restrained. He was then transported to the South Jersey Hospital System for examination, where he was diagnosed as suffering from urinary retention and an enlarged prostate. Dr. Diaz examined Hayes and removed the catheter.

Dr. Diaz's employer, Dr. Read, then met with Hayes and, notwithstanding Hayes's

_____

[1] The United States of America was also a Defendant in the original action, but Hayes is not appealing the summary judgment order granted in its favor.

2

testimony that he had informed Dr. Read that he did not want surgery, Dr. Read scheduled him for a cystoscopy with a possible transurethral resection (TUR). According to Dr. Diaz, it is the routine practice of the office that the physician who schedules a patient's procedures also counsels the patient about the risks and alternatives associated with them. Dr. Read testified that although he did not recall the specifics of his conversation with Hayes, it is his common practice to counsel his patients about the risks and alternatives of the TUR procedure, including its potential risk of impotence.

Hayes signed a Consent to Procedure form on the day he met with Dr. Read. The form gave permission to "Read/Diaz" to perform a cystoscopy and possible TUR. Dr. Diaz subsequently performed both procedures on Hayes.

After being released from the hospital, Hayes continued to urinate blood for several weeks and thereafter realized that he had become impotent. Hayes alleges that neither Dr. Read nor Dr. Diaz discussed the TUR procedure with him and that Hayes signed the consent form without his glasses and without receiving any explanation.

Hayes initially filed a complaint in the United States District Court for the Southern District of New York, alleging medical malpractice against the prison "and others." He then filed his First Amended Complaint naming, among others, the South Jersey Hospital System, Dr. Diaz, and "John Doe" as additional Defendants. The case was subsequently transferred to the United States District Court of New Jersey. Thereafter, Hayes filed his Second Amended Complaint, alleging both medical

3

malpractice and negligence based on lack of informed consent, adding "John Doe, M.D." as a Defendant.

At Dr. Read's deposition, Hayes's counsel told him, "You're not a party to this action, you have not been named as a party to this action, but your name has come up as a doctor who saw Mr. Hayes . . . and I want to ask you some questions about that." Joint App. at 153. In his deposition, Dr. Read testified that he learned about Hayes' litigation against Dr. Diaz shortly after Dr. Diaz was served. Dr. Read further testified that he discussed Hayes' file with Dr. Diaz after learning about the litigation.

Almost a year after Dr. Read's deposition was taken and nearly four years after filing his original complaint, Hayes moved to amend the pleadings to join Dr. Read as a Defendant under Rule 15 of the Federal Rules of Civil Procedure. His motion was granted and Hayes filed his Third Amended Complaint naming Dr. Read as a Defendant.

The District Court granted summary judgment in favor of Dr. Read based on the expiration of the applicable two-year statute of limitations[2] and Hayes' inability to satisfy the condition under Federal Rule of Civil Procedure 15(c)(3)(B), which would have allowed his claim against Dr. Read to "relate back" to the date of the original pleading.

When reviewing factual conclusions that a District Court has made in the context of a Rule 15 motion, our standard of review is clear error. Singletary v. Pa. Dep't of Corr., 266 F.3d 186, 193 (3d Cir. 2001). When reviewing a diversity case involving Rule

---

[2] N.J. Stat. Ann. § 2A:14-2 (West 2000).

15, we apply federal law.  <u>Loudenslager v. Teeple</u>, 466 F.2d 249, 250 (3d Cir. 1972).

Under Rule 15(c)(3)(B), in order for an amended complaint to "relate back" to the date of the original pleading, a newly named defendant must have known or should have known that, but for a mistake concerning his identity, the action would have been brought against him in the first place.  <u>Singletary</u>, 266 F.3d at 194.

Dr. Read had no reason to know that, but for Hayes's mistake, he should have been named in the original complaint.[3]  For one thing, the complaint did not include a lack of informed consent claim.  If it had, Dr. Read arguably would have had reason to know that he should have been named as a defendant, because it was he who was responsible for explaining the risks of the procedure to Hayes.  Moreover, as indicated in the District Court's opinion, Hayes never claimed that he did not have access to his medical records, where Dr. Read's name easily could have been obtained.  Also, there is no evidence that Dr. Read withheld information about his identity from Hayes in order to avoid being named as a defendant.  <u>See id</u>. at 201-02 n.5 (noting that fairness requires allowing a plaintiff to add a newly named defendant where that party knew about the suit and knew it involved him, but willfully failed to provide information about his identity to the plaintiff).  Accordingly, we find that the District Court did not err in concluding that there was no "relation back" and that the claims against Dr. Read are time-barred.

---

[3] Hayes did not provide the original complaint to the District Court or to us. Therefore, like the District Court, we rely on the content of the First Amended Complaint for purposes of our analysis.

5

We also find that the District Court's second order, granting Dr. Diaz's motion for summary judgment on Hayes' medical malpractice claim, was proper.

In reviewing a case over which we have diversity jurisdiction, we apply the law of the forum state. Klaxon Co. v. Stentor Elec. Mfg. Co. Inc., 313 U.S. 487, 496 (1941); Calhoun v. Yamaha Motor Corp., USA, 216 F.3d 338, 343 (3d Cir. 2000). Thus, under New Jersey law, Hayes needed to show that Dr. Diaz deviated from accepted standards of medical care and that the deviation proximately caused Hayes's injuries. Schueler v. Strelinger, 204 A.2d 577, 585 (N.J. 1964); Bondi v. Pole, 587 A.2d 285, 287 (N.J. Super. Ct. App. Div. 1991). Hayes also needed to show that Dr. Diaz did not exercise reasonable judgment in caring for Hayes, and that Diaz's judgment represented a "departure from the requirements of accepted medical practice." Schueler, 204 A.2d at 585. In order to establish that this deviation caused Hayes's injuries, an expert witness must attest to a reasonable degree of medical probability that such a causal connection existed. Bondi, 587 A.2d at 287.

Hayes's sole expert witness, Dr. Kallet, testified that there were non-surgical alternatives available which should have been attempted prior to performing the TUR. However, Dr. Kallet did not opine as to whether the decision to perform the TUR without attempting any alternative was a deviation from accepted standards of medical care. Moreover, Dr. Kallet noted that he found nothing in his review of the case which would have indicated negligence on the part of any physician.

6

As to causation, Dr. Kallet testified that he did not have an opinion to a reasonable degree of medical probability that the TUR caused or contributed to Hayes' impotence. Furthermore, Dr. Malloy, an expert for the defense, testified that the "TUR would have had a very small chance of causing any problems," and indicated that other factors were more likely to have contributed to Hayes's sexual dysfunction. Joint App. at 246.

Accordingly, Hayes failed to provide evidence that the TUR procedure was the cause of the impotence, and we will affirm the District Court's ruling on this issue.

Finally, we will not disturb the District Court's third order granting summary judgment to Dr. Diaz based on Hayes' lack of informed consent claim.[4] In order to survive summary judgment on this issue, Hayes first needed to provide evidence that Dr. Diaz withheld pertinent medical information about the risks of the TUR procedure, its alternatives, or the possible results if the procedure were not performed. Howard, 800 A.2d at 79. Second, he needed to show that there was a causal link between the lack of disclosure and the injury itself. Id. Third, Hayes was required to demonstrate that a

---

[4] Hayes raises a claim of battery as well as lack of informed consent, ignoring the fact that he did not include such a claim in any of his amended complaints. The District Court noted this in its second order, concluding that Hayes was precluded from advancing the battery claim. In its third order, the District Court discussed the concept of "ghost surgery" (where a patient consents to surgery performed by one doctor, but then another doctor is substituted as the surgeon without the patient's knowledge). Although the Court correctly determined that the theory is not applicable to this case, its discussion was unnecessary because "ghost surgery" involves a claim of battery, not lack of informed consent. Howard v. Univ. of Med. & Dentistry of N.J., 800 A.2d 73, 80-81 (N.J. 2002) (citing Perna v. Pirozzi, 457 A.2d 431, 439 (N.J. 1983)).

7

reasonably prudent patient in his position would have declined to undergo the treatment if he had been informed of its risks. Id. Finally, Hayes needed to show that "'the undisclosed risk occurred and harmed [him],'" and that the "'surgical procedure was a proximate cause of [his] injuries.'" Id. (citation omitted).

As stated above, the lack of informed consent claim against Dr. Read is time-barred. Thus, we focus our inquiry, as the District Court did, on whether Dr. Diaz had a separate duty to inform Hayes.

Dr. Diaz testified that the routine practice of the office is that the physician who schedules a patient's procedure also counsels the patient about its risks before obtaining his consent. Thus, Dr. Diaz neither counseled Hayes nor obtained his consent because he knew that Dr. Read would do so. Prior to operating on Hayes, Dr. Diaz reviewed his medical file to be sure that Hayes signed the consent form, which gave both Dr. Diaz and Dr. Read permission to perform the TUR. Hayes has not presented us with, nor have we found, any authority indicating that Dr. Diaz had a separate duty to again disclose to Hayes all of the risks involved in the procedure or to re-obtain his consent.

Additionally, we note that even if Hayes were able to successfully argue that Dr. Diaz had such a duty, he could not survive a summary judgment motion on this issue because he failed to provide evidence that the TUR procedure proximately caused his impotence. Therefore, the District Court's summary judgment order on this third issue was appropriate.

8

Because the District Court correctly granted the motions for summary judgment against Hayes, we will affirm.

———————————————

TO THE CLERK OF COURT:

Please file the foregoing opinion.

/s/  Marjorie O. Rendell
Circuit Judge

10